723 So.2d 480 (1998)
Sheila CAVALIER, Individually and in Her Capacity as Tutrix of Her Minor Son, Tavius Cavalier
v.
Gary Brent WARD, State Farm Mutual Automobile Insurance Company, Ellen Sanders, and the East Baton Rouge Parish School Board.
No. 97 CA 1927.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
Writ Denied December 11, 1998.
Floyd J. Falcon, Jr., Baton Rouge, Attorney for Plaintiffs/Appellees, Sheila Cavalier, etc.
Harold J. Adkins, Baton Rouge, L. Lane Roy, Lafayette, Attorneys for Defendants/Appellants, Ellen Sanders and the East Baton Rouge Parish School Board.
Stephen T. Perrien, New Orleans, Attorney for Intervenor Ochsner Health Plan, Inc.
*481 Before: SHORTESS, C.J., CARTER, and WHIPPLE, JJ.
CARTER, J.
This is an appeal from a judgment rendered in favor of plaintiffs in an action for damages arising out of an accident in which a middle school student was struck by a truck while crossing a city street.

BACKGROUND
The accident occurred on the morning of October 24, 1994. Tavius Cavalier, an eleven-year-old student at Prescott Middle School, was waiting for a school bus at the designated bus stop at approximately 6:30 a.m. The bus stop was located on the north side of Hollywood Street, at its intersection with Breckenridge. At this intersection, Hollywood Street is a two-lane, paved road which is separated by painted double lines. The parties described Hollywood Street as a heavily-traveled thoroughfare. Tavius' house was located on the south side of Hollywood Street, directly across Hollywood Street from the bus stop. Ellen Sanders (Sanders), the driver of Tavius' bus, had picked up Tavius and other Prescott Middle School students at this particular location for at least two weeks prior to the accident.
It is undisputed that Shelia Cavalier, Tavius' mother, never accompanied Tavius across the street to his bus stop, and rarely watched Tavius walk to the bus stop. Instead, Ms. Cavalier assigned this responsibility to her sixteen-year-old daughter, Shetila, who waited for a school bus to Tara High School at the same bus stop.

FACTUAL AND PROCEDURAL HISTORY
On the morning of the accident, Ms. Cavalier was still in bed when Shetila accompanied Tavius across Hollywood Street to the designated bus stop. The bus usually arrived about 6:50 a.m. While Tavius was waiting for the bus to arrive, Tavius announced that he had to return home to get some books. Shetila heard Tavius and told him to wait so she could be certain it was safe for Tavius to cross the street. It was still dark at this time. Shetila looked up and down Hollywood Street and determined it was safe for Tavius to cross the street. After Tavius had crossed the center lines of Hollywood Street, he suddenly slipped in the street and fell down. Before he could get up, he was hit by a truck which was driven by defendant, Gary Ward (Ward). According to Shetila, the truck "came out of nowhere" and did not have its lights on at the time of the accident.
On January 19, 1995, Shelia Cavalier, individually and as tutrix of her minor child Tavius, filed suit against Ward; his insurer, State Farm Mutual Automobile Insurance Company (State Farm); East Baton Rouge Parish School Board (EBRPSB); and Tavius' bus driver, Sanders, for the damages she and Tavius sustained as a result of the accident. Prior to trial, plaintiffs settled with Ward and State Farm, and the suit against Ward and State Farm was dismissed. Pursuant to a stipulation between plaintiffs and the remaining defendants, EBRPSB and Sanders, the liability and quantum issues were bifurcated. A trial on the liability issues was held on January 28, 1997. In its oral reasons for judgment, the trial court found in favor of plaintiffs, casting EBRPSB and Sanders 100% liable for the accident. The trial court specifically found that neither Ms. Cavalier nor Ward were at fault; it also did not assess any fault to Tavius or Shetila.
On February 13, 1997, a judgment in favor of plaintiff and against EBRPSB and Sanders was signed by the trial court. EBRPSB and Sanders filed a motion for a new trial which was denied. Accordingly, EBRPSB and Sanders suspensively appealed from the judgment in favor of plaintiffs, assigning the following errors:
1. The Trial Court erred in assigning liability to the East Baton Rouge Parish School Board and Ellen Sanders because Tavius Cavalier was not under the care, custody or control of the School Board or any of its employees, nor was he on school property at the time of his injury.
2. The Trial Court erred in finding that crossing a street to arrive at a designated bus stop is misconduct under School Board regulations.

*482 3. The Trial Court erred in finding that School Board regulations create an affirmative duty on the part of school bus drivers to prevent students from crossing any street out of the presence of the school bus to wait at a designated bus stop, to instruct or inform students not to cross any streets at any time out of the presence of the school bus, or to discipline students who cross a street prior to the arrival of the school bus to wait at a designated bus stop.
4. The Trial Court erred in not assigning some percentage of liability for the present accident to Gary Ward, Sheila Cavalier, Tavius Cavalier, and/or Shetila Cavalier because these persons each breached their duty to protect against or avoid the accident herein.

LIABILITY OF EBRPSB AND SANDERS

(Assignments of Error One, Two and Three)
At the trial, plaintiffs argued that appellants had a duty to ensure that no students crossed the street to reach a bus stop until the bus arrived at the bus stop. Plaintiffs base this duty on two school board regulations which were promulgated by the EBRPSB and adopted by Prescott Middle School. The source of the first regulation is the 1994 Operating Handbook for the East Baton Rouge Parish School System. The second regulation is contained in a document entitled "Rules for School Bus Passengers." These regulations provide as follows:
1) Students should cross only in front of the bus in view of the driver. They should not be allowed to cross the street behind the bus. When it is safe for the students to cross the street, the driver should use hand signals to let the students know.
2) If you must cross the street to board the bus, do so very carefully. Wait for your driver's directions and cross at least 10 feet in front of the bus after the driver signals it is OK to cross. You should also check for traffic in both directions before crossing.
Plaintiffs asserted that Sanders should have known that some of the students at the subject bus stop, such as Tavius, were crossing Hollywood Street in derogation of the second rule cited above which plaintiffs assert required students to wait to cross any street until the arrival of the bus. Thus, plaintiffs argue that Sanders should have taken appropriate actions to ensure that the violators of this regulation were disciplined. Had Sanders done this, plaintiffs contend that the accident would not have occurred.
In its oral reasons for judgment, the trial court provided detailed reasons for his conclusion that Ward and Ms. Cavalier were not at fault for the subject accident. However, in assessing 100% liability for the accident to EBRPSB and Sanders, the trial court simply stated: "[T]he liability for this accident lies with the remaining defendants in this case, Ms. Sanders and the East Baton Rouge Parish School Board." There were no reasons given to explain the trial court's basis for assessing fault to appellants. For the following reasons, we find that the trial court erred in finding that any liability for the accident rested with EBRPSB and Sanders.
In Louisiana, for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: 1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); 2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); 3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); 4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and 5) actual damages (the damages element). Mathieu v. Imperial Toy Corporation, 94-0952, pp. 4-5 (La.11/30/94); 646 So.2d 318, 322. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corporation, 646 So.2d at 326.
In this case, plaintiffs have not argued either at trial nor on appeal that the designation *483 of the north side of Hollywood at its intersection with Breckenridge as the bus stop for Tavius, who lived on the south side of Hollywood Street, was improper or dangerous. Rather, the issue we must decide is whether Sanders and/or the EBRPSB was charged or bound with control of the children in getting to the established pick-up points. Stated differently, does the school board and/or its bus drivers owe a duty to ensure that a child (leaving his home or place of abode) reaches a designated bus stop safely prior to the time that the bus appears or arrives at the bus stop to pick up the student to transport the student to his respective school.[1]
The determination of whether a duty exists is a legal question. Whether one party owes a duty to another depends upon the facts and circumstances of the case and on the relationship of the parties. Davis v. Insurance Company of North America, 94-0698, p. 18 (La.App. 1st Cir.3/3/95); 652 So.2d 531, 543, writ denied, 95-0840 (La.5/5/95); 654 So.2d 334. We fail to find that the law of Louisiana imposes such a duty on Sanders or EBRPSB under the facts of this case, nor do we find that Sanders or EBRPSB assumed such a duty through the above-referenced rules and regulations which have been created or adopted by EBRPSB.
Donald Thomas, the Dean of Students at Prescott Middle School, testified regarding the interpretation of the two subject regulations which deal with crossing a street to catch, board or exit a bus. According to Mr. Thomas, the subject rules on proper crossing apply only when a bus and its driver are present and the student is crossing to get on a bus. In his opinion, the rules do not apply to the situation wherein a student must cross a street or streets to get to a designated bus stop outside the presence of the bus and its driver.
Walter Browder, the Assistant Director of Transportation for the East Baton Rouge Parish School System, also testified regarding the interpretation of the subject rules. Mr. Browder testified that the rules do not mean that students cannot or shall not cross a street to reach a designated bus stop before the bus arrives. Instead, the rules were intended to address the situation when a child is crossing or has to cross a street in the presence of a bus and its driver.
Sanders also testified about her interpretation of the above-referenced rules and regulations. While it appears from the record that, at the time of the accident, Sanders was under the impression that these rules required the students to wait to cross until she arrived, she never reported any violation of the rules because the students were always standing at the designated stop and Sanders had not received any complaints from parents of the students at the subject bus stop that the bus stop location was unsafe. Thus, Sanders did not feel that she had a problem at the subject bus stop. At trial, upon examination by plaintiffs' counsel, Sanders acknowledged that the students were always waiting on the north side of Hollywood Street at the designated bus stop when she arrived each school morning and thus were not abiding by the rule as interpreted by plaintiffs. However, Sanders later cleared up this statement by testifying that as she understood the rules, she was required to act if she had an unsafe situation at the bus stop. Sanders never perceived the behavior of the students at this stop as unsafe because when she arrived in the bus, the students were standing on the corner and no one was running across the street. Accordingly, she did not feel that there was anything to report.
After a thorough review of the record, we find that neither of the subject rules prohibit students from crossing any street to reach their designated bus stop unless the crossing takes place in the presence of the bus driver. Neither rule expressly states that students must wait until the bus arrives before crossing a street which is located between the students' respective homes and the bus stop. Clearly, these rules were intended to apply when the bus stop was located on the opposite side of a street from the place where the students would ultimately board the bus; as well as when the students attempt to cross *484 when the bus is present; and when the students are dropped off at the designated stop and have to cross the street to return home. In these instances, the children should wait for the bus driver to signal it is safe to cross and should cross only in front of the bus. Moreover, we note that the express language of the second rule refers to crossing a street to "board" a bus, rather than crossing a street to wait for the arrival of a bus.
To interpret these rules as plaintiffs desire would lead to absurd results. For instance, in order to arrive at the designated bus stop at issue in this appeal, some children had to cross Hollywood Street, others had to cross Breckenridge, while some possibly had to cross both Hollywood Street and Breckenridge. It is further possible that there were other streets which some students assigned to this bus stop had to cross in order to get from their respective homes to the bus stop. In these situations, it would be impossible for the bus driver to ensure that no student crossed any street to reach the bus stop except when the bus was present. To do this, the driver would, in effect, have to follow each child from his or her home to the bus stop, securing each intersection the student had to cross to arrive at his or her bus stop. This would totally defeat the effectiveness and purpose of having designated bus stops to pick up groups of students. Moreover, it would result in students waiting on all four corners of the intersection, again making it impossible for the bus driver to ensure the safe crossing of the two streets, as the bus driver could not secure more than one street at a time for pedestrian crossing. Thus, the only reasonable interpretation of the rules which plaintiffs contend create a duty on the part of appellants is that once a bus is present, or in the situation where the designated bus stop is located on the opposite side of a street from where the students must board the bus, students should cross only upon the signal of the driver.
The duty to ensure the safety of students prior to the time that the bus arrives and after the time the school bus drops them off at their designated bus stops rests solely with the students themselves and their parents or guardians. The liability of the school board and its employees for injuries to students exists only when the school board has actual custody of the students entrusted to their care. At the time of the accident, Tavius was not in the possession, custody, or under the protection of the school board or any of its employees and there was clearly no duty on the school board or its employees to prevent Tavius from crossing the street before arrival of the school bus. Accordingly, the trial court legally erred in its implicit finding that Sanders and EBRPSB owed a duty to Tavius to ensure that he did not cross the street until the arrival of his bus. Because there was no duty, the plaintiffs failed to carry their burden of proof and the trial court improperly assessed liability to the appellants.
Because we are reversing the judgment insofar as it finds appellants liable for the subject accident, we need not address appellants' final assignment of error regarding the trial court's failure to assess any fault for the accident to Tavius, Ms. Cavalier, Shetila or Ward.

CONCLUSION
For the reasons set forth above, the trial court judgment is reversed. Judgment is hereby rendered dismissing plaintiffs' suit against appellants. Costs of this appeal are assessed to plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] We note specifically that this case is different from the situation where a child is waiting for a school bus on school grounds under supervision of school personnel.