LOLLEY, J.
| defendants Mini World Daycare (“the daycare”) and Colony Insurance Company appeal the judgment of the City Court of Monroe, Parish of Ouachita, State of Louisiana, in favor of Kassandra Wade (“the mother”) on behalf of her minor child, Ta’Marrion Wade (“the child”), finding the daycare negligent and, thereby, liable for the child’s injuries. For the following reasons, we reverse.
Facts
On October 9, 2008, the child was picked up from his home by the daycare’s van and arrived at the daycare. The child was two years and nine months old at this time and was a regular student of the daycare. As was the routine, the children played on the playground that morning. When the children lined up to leave the playground and return to the classroom, the child’s teacher, Arial Hunter, noticed the child was missing a front baby tooth. She testified that the child did not complain of pain or appear upset, although he did have some blood in his mouth. The tooth was not recovered despite Hunter’s attempt to locate it. Hunter subsequently washed the child’s mouth out and called the mother to inform her of what had occurred. She also informed the director of the daycare, who then wrote an incident report describing the event. The child remained at the daycare until the mother picked him up several hours later. He did not return to the daycare again.
On October 23, 2008, fourteen days after the incident, the child was seen by a dentist, Dr. Kimberly Caldwell. Dr. Caldwell extracted the root of 12the tooth that had fallen out and also extracted a second front baby tooth that she found was loose.
The mother filed suit in Monroe City Court claiming the daycare was liable for the child’s injury because it was negligent in failing to properly supervise the child and provide a safe play area. The daycare denied these allegations. After a trial on the matter, the court found the daycare at fault and asked for briefs regarding damages for loss of baby teeth in order to assess the quantum of damages to be awarded. The mother requested general damages of $20,000, expert fees of $2,500, the cost of the deposition, and the cost of the dental visit. The daycare suggested damages in the range of $250 to $750, half the dental bill, and expert fees. The city court awarded $7,550 in general damages, $500 in expert fees, and reimbursement of the dental bill to Medicaid. The daycare and its insurance provider, Colony Insurance, filed this appeal.
Law and Discussion
In their first assignment of error appellants contend that the trial court erred in finding the daycare negligent and *1047 in finding causation. In a civil lawsuit the burden is on the plaintiff to prove the negligence of the defendant by a preponderance of the evidence. Stone v. Bullard, 43,996 (La.App.2d Cir.01/28/09), 2 So.3d 1241; Hughes v. Scottsdale Ins. Co., 35,043 (La.App.2d Cir.08/22/01), 793 So.2d 537. Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); [s(2) whether the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or the scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Hanks v. Entergy Corp., 2006-477 (La.12/18/06), 944 So.2d 564. It is well-settled law that in order to reverse a lower court’s factual determination a reviewing court must review the record in its entirety and conclude that a reasonable factual basis does not exist for the finding, and further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. Bonin v. Ferrellgas, Inc., 2003-3024 (La.07/02/04), 877 So.2d 89; Irrigation Mart, Inc. v. Gray, 42,442 (La.App.2d Cir.09/19/07), 965 So.2d 988. A determination of negligence or fault is a factual determination; therefore, an appellate court will utilize the manifest error standard when reviewing such. Cazes v. Parish of West Baton Rouge, 1997-2824 (La.App. 1st Cir.12/30/98), 744 So.2d 54, 61; see Easter v. Direct Ins. Co., 42,178 (La.App.2d Cir.05/09/07), 957 So.2d 323, 328. The issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the trier-of-fact’s conclusion was a reasonable one. Id.
A proper examination of this case necessitates a negligence analysis. The first inquiry in such an analysis is whether the defendant had a duty to conform his conduct to a specific standard. Temporary custodians of ^children, such as school personnel and daycare workers, are charged with the highest degree of care toward the children left in their custody, but are not insurers of the children’s safety; supervisors must follow a standard of care commensurate with the age of the children under the attendant circumstances. Glankler v. Rapides Parish School Bd., 610 So.2d 1020 (La.App. 3d Cir.1992), writ denied 1993-0017 (La.03/19/93), 614 So.2d 78.; Drueding v. St. Paul Fire & Marine Ins. Co., 482 So.2d 83 (La.App. 4th Cir. 1986). This duty, however, does not require individual supervision of each child at all times and places. Glankler, supra; Comeaux v. Commercial Union Ins. Co., 269 So.2d 500 (La.App. 4th Cir.1972). Therefore, in this case it is clear the daycare did owe a duty to the children in its care, including the child in question, but this duty is not without limitations.
The next inquiry in the duty/risk analysis is whether the defendant’s conduct failed to conform to the appropriate standard. This is at the heart of the case at hand. The state, through the Department of Social Services Bureau of Licensing (“the department”), requires that licensed child care centers maintain a certain ratio of number of children to number of teachers based on the age of the children. La. Admin. Code tit. 67, chap. 73 (2011). On the day in question it is uncontroverted that this ratio was properly maintained. Additionally, the state mandates the fashion in which daycare teachers must supervise children in their care: children should be under direct supervision at all times; *1048 children should never be left alone; child care staff should devote their time to supervise, meet the children’s needs, and I.^participate with them. Id. From the testimony given it is clear that under such circumstances, defendant daycare was furnishing and maintaining adequate supervision according to state standards.
Not only did the daycare conform to the appropriate state standards, but it also conformed to the appropriate legal standards as well. Testimony at trial shows that on the morning of the incident the child played on the playground with his peers. Hunter, the child’s teacher, testified that she noticed him engaging in typical child’s play on the playground that morning, followed by the child falling.
Question: Was, was — do you remember exactly what he [the child] was doing?
Answer: He was — they was racing. Just running around with a couple of other boys.
Question: Is that okay for them to do on the playground?
Answer: Yes sir.
Question: Do you stop them if they are running around or are they running crazy and doing whatever they want out there?
Answer: They are not running crazy. They are just running and playing.
Question: Do you discipline them and stop them from doing some things on the playground?
Answer: If it gets too out of hand, I will.
Question: What are they supposed to do and what are they not supposed to do when they are on the playground?
Answer: They are not supposed to fight. They are not supposed to kick. They are not supposed to push or shove, but they are free to run around and play with each other.
Question: It is an enclosed area?
Answer: Yes sir, it is an enclosed area.
Question: Now, when you saw him fall, did you notice if he fell on his face or his teeth at that time?
Answer: He fell face down.
Question: ... Did he appear hurt at any time?
Answer: No sir.
Question: Did he continue to play after that?
Answer: He got up and started running.
Question: And ran some more?
Answer: Yes sir.
| ^Hunter further described that upon lining the children up to return indoors, she noticed the child had sustained an injury, although he was not showing signs of pain or discomfort. She cared for the child, called his mother, wrote an incident report, and made certain the child was not in pain.
While daycare professionals have a duty to attempt to prevent theses injuries, sometimes it is impossible, as in the situation described by Hunter. Just because a child is injured while in the custody of a daycare does not mean that daycare was acting negligently. This concept was clearly articulated in Oldham v. Hoover, 140 So.2d 417, 421 (La.App. 1st Cir.1962):
It is only reasonable and natural that children during the course of play will fall or accidentally strike or bump into each other or some object. While supervisors of a day nursery are charged with the highest degree of care toward the children placed in their custody, they are nevertheless not the absolute insurers of their safety and cannot be expected or required to prevent children from falling or striking each other during the course of normal childhood play.
There was also no evidence that the daycare’s play area was unsafe, as plaintiff *1049 contended. Hunter testified that the play area was a typical outdoor playground with grass and leaves on the ground. This fact was left uncontroverted.
The evidence shows beyond any question that not only did the daycare have the required number of supervisors or attendants present, but also that the attendants were present on the grounds at the time that the accident occurred. It is obvious from the record that the plaintiff in this case did not meet her burden of proof, and the lower court erred in finding she |7did. Therefore, we conclude that the city court committed manifest error by finding the daycare liable, and we reverse the judgment.
Appellant raises two additional assignments of error; however, considering the finding herein, a discussion of these is pretermitted.
Conclusion
For the foregoing reasons, we reverse the judgment in favor of Kassandra Wade on behalf of her minor child, Ta’Marrion Wade. All costs of this appeal are to be borne by appellees.
REVERSED.