STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2024 CA 0244

MATTHEW GRADY AND MELICIA GRADY, INDIVIDUALLY
AND AS REPRESENTATIVES OF THE MINOR,
ELEANOR GRADY

VERSUS

MIA NICOLE AHLES, LITTLE PEOPLE'S PLAY STATION, LLC,
AND MARKEL INSURANCE COMPANY

JUDGMENT RENDERED: **DEC 2 0 2024**

* * * * * * *

Appealed from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 702,107 • Section 23

The Honorable Kelly Balfour, Presiding Judge

* * * * * * *

Gary P. Koederitz
Baton Rouge, Louisiana

COUNSEL FOR APPELLANTS
PLAINTIFFS—Matthew Grady and
Melicia Grady, individually and as
representatives of the minor, Eleanor
Grady


Ernest P. Gieger, Jr.
Emily E. Eagan
Morgan A. Druhan
New Orleans, Louisiana

COUNSEL FOR APPELLEES
DEFENDANTS—Little People's Play
Station, LLC; Wilshire Insurance
Company; and Joida, LLC

* * * * * * *

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

JEW

Welch, J. dissents in part with reasons assigned

**LANIER, J.**

Plaintiffs, Matthew and Melicia Grady, individually and on behalf of their minor child, Eleanor Grady, appeal the trial court's judgment that granted summary judgment in favor of Defendants, Little People's Play Station, LLC, Joida, LLC, and Wilshire Insurance Company, and dismissed Plaintiffs' claims against Defendants with prejudice. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Plaintiffs' son, Oliver, and their daughter, Eleanor, were enrolled in daycare at Little People's Play Station, LLC. The accident at issue occurred on June 4, 2020, as Mr. Grady picked up his children from daycare. While Mr. Grady was loading Oliver's car seat into his vehicle, two-year-old Eleanor walked near a white 4-Runner that was parked in front of Mr. Grady's vehicle. As the 4-Runner began to accelerate forward, the vehicle struck Eleanor, who suffered injuries.

Plaintiffs filed a petition for damages, as well as a first amended and supplemental petition for damages, against the driver of the 4-Runner (Mia Ahles) and her insurer (GoAuto Insurance Company); Little People's Play Station, LLC (the daycare); Joida, LLC (owner and operator of the daycare); Markel Insurance Company (the daycare's insurer); and Wilshire Insurance Company (the daycare's insurer). Pertinent herein, Plaintiffs alleged that Little People's Play Station, LLC and Joida, LLC breached a duty of reasonable care; failed to warn Plaintiffs of the hazardous conditions presented in the pick-up and drop-off areas of the daycare; failed to supervise children in the pick-up and drop-off areas; failed to perform its duties in a safe manner; failed to train its employees; failed to supervise its employees; and other acts and omissions of fault and negligence to be proved at trial.

Little People's Play Station, LLC, Joida, LLC, and Wilshire Insurance Company (collectively, "Defendants") filed a motion for summary judgment, arguing that Plaintiffs could not meet their burden of proving that the daycare owed

2

a duty of supervision over Eleanor at the time of the accident. Defendants argued that per the daycare's pick-up procedure—a copy of which was provided to Plaintiffs and acknowledged as received by them—Mr. Grady parked in the outdoor drive in front of the daycare, entered the daycare, signed his children out for the day, retrieved the children from their respective classrooms, and walked the children back outside to his vehicle to leave the premises. Defendants contended that at the time of the accident, Eleanor was in the sole custody and supervision of her father in accordance with the daycare's pick-up procedure; therefore, the daycare no longer owed a duty to supervise the child. Because the daycare no longer owed a duty to supervise the minor child, Defendants argued there was no breach of the duty of supervision. Additionally, Defendants argued "there was no breach of any duty by [the daycare], as they acted as a reasonable daycare under the circumstances."

Plaintiffs opposed Defendants' motion for summary judgment, arguing that the daycare's pick-up procedure did not provide any support for Defendants' claim that minor children exit the daycare solely under their parents' custody and control. Plaintiffs averred that the daycare owed the highest degree of care toward children under its supervision. Plaintiffs further argued that even if Defendants did not have a duty to supervise the loading and unloading of children into their parents' vehicles in the parking lot, Defendants assumed that duty by sometimes having employees present in the pick-up and drop-off areas of the parking lot on dates prior to the accident at issue.

Following a hearing, the trial court granted Defendants' motion for summary judgment, finding "no duty on behalf of" the daycare. The trial court signed a judgment in conformity with its ruling on November 28, 2023, which granted the motion for summary judgment filed by Defendants; dismissed the claims brought by Plaintiffs against Defendants with prejudice; and reserved Plaintiffs' causes of

actions against other defendants. Plaintiffs now appeal,[1] assigning three errors to the trial court's judgment.[2]

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. **Murphy v. Savannah**, 2018-0991 (La. 5/8/19), 282 So.3d 1034, 1038. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1 Cir. 1/9/20), 294 So.3d 522, 526. A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F); **Anderson v. Laborde Construction Industries, L.L.C.**, 2018-1583, 2019-0356 (La. App. 1 Cir. 3/12/20), 311 So.3d 1072, 1080, writ denied, 2020-00924 (La. 10/20/20), 303 So.3d 307.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1); **Lucas v. Maison Insurance Co.**, 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 84. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, after

---

[1] Plaintiffs filed a motion for devolutive appeal on January 3, 2024. The trial court signed an order of appeal on January 5, 2024, notice of which was transmitted by the clerk of court to the parties on January 9, 2024. In accordance with La. C.C.P. arts. 2127 and 2128, Plaintiffs designated portions of the record to constitute the record on appeal. See Uniform Rules, Courts of Appeal, Rules 2-1 through 2-1.17. See also **Bezet v. Original Library Joe's, Inc.**, 2001-1586, 2001-1587 (La. App. 1 Cir. 6/21/02), 835 So.2d 472, 475.

[2] First, Plaintiffs argue the trial court erred by determining that Defendants owed no duty to Plaintiffs. Second, Plaintiffs contend that the trial court erred by failing to find that Defendants voluntarily assumed a legal duty to Plaintiffs. Lastly, Plaintiffs aver that the trial court erred by granting Defendants' motion for summary judgment despite the existence of genuine issues of material fact.

4

meeting his initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1); **Lucas**, 358 So.3d at 84.

Appellate courts review the grant or denial of a motion for summary judgment *de novo* using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. See **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 2018-1148 (La. App. 1 Cir. 2/28/19), 274 So.3d 583, 587. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. **Madden v. Fairburn**, 2022-1055 (La. App. 1 Cir. 4/14/23), 365 So.3d 811, 815. A "genuine" issue is a triable issue, which means an issue on which reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. **Madden**, 365 So.3d at 815.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Chapman v. Haynes**, 2022-0288 (La. App. 1 Cir. 9/16/22), 352 So.3d 1023, 1027.

5

## LAW AND DISCUSSION

### Negligence

In an action to recover damages for injuries allegedly caused by another's negligence, a plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. **Broussard v. Voorhies**, 2006-2306 (La. App. 1 Cir. 9/19/07), 970 So.2d 1038, 1042, writ denied, 2007-2052 (La. 12/14/07), 970 So.2d 535. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. **Guilbeau Marine, Inc. v. Ledet**, 2023-0065 (La. App. 1 Cir. 9/15/23), 375 So.3d 977, 985 n.10, writ denied, 2023-01369 (La. 12/19/23), 375 So.3d 411. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiff's injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection, or legal cause element); and (5) actual damages (damages element). **Guilbeau Marine**, 375 So.3d at 985 n.10. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Hemphill v. Smith**, 2020-0795, 2020-0796 (La. App. 1 Cir. 7/22/21), 328 So.3d 1224, 1230, writ denied, 2021-01286 (La. 11/17/21), 327 So.3d 997.

Here, Defendants specifically sought summary judgment on two bases: that there was an absence of factual support for the duty element of Plaintiffs' negligent supervision claim and that there was no breach of any duty owed by the daycare. Therefore, our discussion herein is limited to those elements. See La. C.C.P. art. 966(F).

6

## Duty of Supervision

Our inquiry begins with whether Defendants owed a duty to Plaintiffs. Plaintiffs argue that defendants owed a legal duty to reasonably supervise traffic and children in the daycare facility's drop-off and pick-up areas for the protection of the children attending the daycare. Additionally, Plaintiffs argue that, if there is no such legal duty, Defendants voluntarily assumed that duty of supervision by sometimes having daycare employees located outside in the parking lot and drive monitoring drop-off and pick-up.

The existence of a duty is a question of law. **Farrell v. Circle K Stores, Inc.,** 2022-00849 (La. 3/17/23), 359 So.3d 467, 473. Temporary custodians of children, such as school personnel and daycare workers, are charged with the highest degree of care toward the children left in their custody, but they are not insurers of the children's safety. Supervisors of children must follow a standard of care commensurate with the age of the children under the attendant circumstances. **Wade v. Mini World Daycare**, 46,238 (La. App. 2 Cir. 3/13/11), 63 So.3d 1045, 1047. This duty, however, does not require individual supervision of each child at all times and places and is not without limitations. See **Wade**, 63 So.3d at 1047. The liability of the school or daycare for injuries to children exists only when the school or daycare has actual custody of the children entrusted to its care. See **Jackson v. Colvin**, 98-182 (La. App. 3 Cir. 12/23/98), 732 So.2d 530, 533, writ denied, 99-0228 (La. 3/19/99), 740 So.2d 117.

It is undisputed that Defendants herein are the owner, operator, and insurer of the daycare where the child was allegedly injured. As such, Defendants had a duty to supervise Eleanor *while she was in the custody and care of the daycare*. In this case, Defendants argued that there is no genuine issue as to material fact that Eleanor was in the sole custody and care of her legal guardian, her father Mr. Grady, at the

time of the incident; therefore, Defendants maintain the daycare no longer owed a duty of supervision, and Defendants are entitled to judgment as a matter of law.

In support of their motion for summary judgment, Defendants submitted Plaintiffs' petition for damages; Plaintiffs' first amended and supplemental petition for damages; excerpts from Mr. Grady's deposition; Defendants' answer, affirmative defenses, and jury demand to Plaintiffs' first amended and supplemental petition for damages; the affidavit of Penny Navarre, the director of the daycare, with the following attachments: the Parent Handbook (effective September 3, 2014) the daycare sign in/sign out log for Thursday, June 4, 2020, surveillance video of the accident, and daycare employee log; and Plaintiffs' response to Defendants' requests for admission.

In her affidavit, Ms. Navarre stated that the daycare issues a Parent Handbook (the "handbook") to all parents prior to their children beginning early childhood care at Little People's Play Station, LLC. The handbook outlines the policies and procedures that parents must follow for their children to attend the daycare, including a "Safe Arrival and Departure Policy" that outlines the daycare's drop-off and pick-up procedures. Ms. Navarre stated that the daycare does not "provide a carpool line for parents to stay in their car and drop their children off at school or to pick them up from school." The handbook required parents to come into the daycare to drop off their children and to come back inside the daycare at the end of the day to pick up their children. The handbook also required parents to sign in their children at the beginning of the day and sign them out at the end of the day. The handbook's "Safe Arrival and Departure Policy" in effect at the time of the accident at issue specifically provided:

> **All parents must sign children in upon arrival and out upon departure.** Each parent shall be assigned a code to access your child's account at the time of enrollment. This code is used to sign in and sign out your child. Parents are asked not to share codes with unauthorized users. Little

People's Play Station staff will not receive students before 6:00 a.m. Pick up time is by 6:00 p.m. [L]ate fees will apply after this time. No Exceptions. It is understood that on occasion parents have urgent matters that cause them to pick up their child after 6:00 p.m. In this event[,] a late charge of $10.00 plus an additional fee of $1.00 per minute will be applied to every minute after 6:00 p.m.

To prevent unnecessary accidents, parents are asked to take your child/children directly to their class upon entering the building **or** to the designated class for students arriving before 7:30 a.m. Students leaving the building must be accompanied by a parent or an adult from the class to the vehicle. **DO NOT ALLOW** your child the freedom to run or roam the building, classrooms[,] or hallway. We will not release a child to anyone who is not listed on the child's registration release form and does not have a proper picture ID (i.e. driver's license, state ID). Both parents are allowed to sign a child out of the center, unless otherwise stated by custody papers. You must inform us of any restraining orders/custody issues and provide a certified copy of custody orders. Little People's Play Station will not serve as a place for custody visitation.

## Safety Tips during Arrival and Departure

1. Please if you plan to stay more than two to three minutes to drop off your child[,] pull your vehicle to the side and park to allow cars to pass.
2. Please turn your car off and take the keys out of the ignition before entering the center.
3. Please turn off or turn down loud music[.]
4. Please drive very slowly when approaching the building or driving under the shelter[.]
5. Please do not leave small children unattended in your automobile. Any of the following can happen:
6. The child or another child can jump into the driver's seat and change gears[.]
7. The child or baby can choke[.]
8. Someone can abduct your child[.]
9. Children can climb out of the car and get hit by a moving car or wander off[.]
10. Children can go into your purse and open medicine bottles[.]
11. Heat exhaustion or hypothermia may occur since your car should not be left running[.]
12. Head, neck, and arms can get caught in power windows[.]
13. Children can sometimes lock parents out of the car or parents may accidentally lock themselves out of the car[.]

(Emphasis in original).

Mr. Grady testified that on the day of the accident at issue, he arrived at the daycare and parked along a horseshoe drive located in front of the daycare. He shut off his engine and left the doors of his vehicle unlocked. He observed a white 4-Runner parked under a canopy that is located at the entrance of the daycare. The daycare's surveillance video shows that on the date of the incident, Mr. Grady parked directly behind the white 4-Runner that was parked partially under the canopy located at the daycare entrance.

Mr. Grady entered the daycare and signed his children out for the day. According to the daycare's log in/log out sheet, Mr. Grady signed his children out for the day at 5:20 p.m. on the date of the incident. He then retrieved his children from their respective classrooms. Mr. Grady testified that Oliver was strapped into a car seat, and he held Eleanor's hand. Mr. Grady testified that a group of adults, including daycare employees and parents, were standing inside the building near the daycare's entrance. As he exited the daycare, he observed the 4-Runner was still parked in front of his vehicle. When he reached the passenger side of his parked vehicle—at some point between the front headlight and hinge of the front door — Mr. Grady testified that Eleanor pulled away, and he let go of her hand. Thereafter, Eleanor was struck by the 4-Runner. Eleanor was not within Mr. Grady's "line of sight" at the time the contact occurred.

The daycare's surveillance video shows that Mr. Grady exited the daycare building holding Oliver's car seat and his children's bags. Eleanor exited in front of Mr. Grady; the two were not holding hands. As Mr. Grady opened the rear passenger door of his vehicle and placed the car seat inside, Eleanor roamed freely around the concrete lot and the horseshoe drive. She walked back toward the daycare entrance and passed the 4-Runner on its passenger side. As Eleanor walked past the 4-Runner, it began to slowly accelerate forward. As it accelerated, Eleanor walked in front of the 4-Runner, when it eventually struck her. While Mr. Grady loaded the car seat

10

into his vehicle and Eleanor roamed freely, the only other person observable in the concrete lot and the horseshoe drive was a small child who entered the 4-Runner on the driver's side.

Mr. Grady testified that the daycare provided him with a copy of the handbook. He also stated that he was familiar with the daycare's drop-off and pick-up procedures and the flow of traffic during those times, which was essentially the same since Eleanor's enrollment at the daycare. Mr. Grady was not aware of any prior incidents or "close calls" where either of his children came close to being struck by another vehicle, nor had he or his wife ever complained to the daycare about any issues with the drop-off and pick-up procedures.

The instant matter is analogous to cases where the transition of children out of school custody has clearly occurred. In those instances, the courts found that the schools were not liable for injuries suffered by students who were not in the school's custody and control at the time the accidents occurred. See, e.g., **Jackson v. Colvin**, 98-182 (La. App. 3 Cir. 12/23/98), 732 So.2d 530, writ denied, 99-0228 (La. 3/19/99), 740 So.2d 117; **Cavalier v. Ward**, 97-1927 (La. App. 1 Cir. 9/25/98), 723 So.2d 480, writ denied, 98-2615 (La. 12/11/98), 729 So.2d 1047; **Frederick v. Vermilion Parish School Board**, 2000-382 (La. App. 3 Cir. 10/18/00), 772 So.2d 208, writ denied, 2000-3171 (La. 1/12/01), 781 So.2d 561; **BL v. Caddo Parish School Board**, 46,557 (La. App. 2 Cir. 9/21/11), 73 So.3d 458; **Hayes v. Sheraton Operating Corp.**, 2014-0675 (La. App. 4 Cir. 12/10/14), 156 So.3d 1193; and **Raymond v. Iberia Parish School Board**, 2020-596 (La. App. 3 Cir. 6/9/21), 323 So.3d 447, writ denied, 2021-00986 (La. 11/3/21), 326 So.3d 892. Further, those cases involving children who were injured while clearly in the custody and under the supervision of a school or daycare are distinguishable. Cf. **Higginbotham v. Community Christian Academy, Inc.**, 2003-0462 (La. App. 1 Cir. 12/31/03), 868 So.2d 765; **Yates Through Yates v. Children's Workshop**, 555 So.2d 503 (La.

App. 4 Cir. 1989); **Gary on Behalf of Gary v. Meche**, 626 So.2d 901 (La. App. 3 Cir. 1993); and **Sutton v. Duplessis**, 584 So.2d 362 (La. App. 4 Cir. 1991).

Based on our *de novo* review of the evidence submitted by Defendants in support of their motion, and the applicable jurisprudence, we find that Defendants met their initial burden of showing that there are no genuine issues of material fact that the daycare did not have custody and control of Eleanor at the time of the accident at issue, and therefore, did not owe a duty of supervision. See La. C.C.P. art. 966(D)(1); **Lucas**, 358 So.3d at 84. The burden then shifted to Plaintiffs to produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that Defendants are not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1); **Lucas**, 358 So.3d at 84.

In opposition to Defendants' motion for summary judgment, Plaintiffs submitted excerpts from Mr. Grady's deposition; excerpts from Mia Ahles's deposition; Plaintiffs' petition for damages and first amended and supplemental petition for damages; the affidavit of Penny Navarre ; two versions of the Parent Handbook, one effective September 3, 2014 and one effective February 1, 2023; excerpts from the La. C.C.P. art. 1442 deposition of Little People's Play Station, LLC, through Penny Navarre; Louisiana Department of Education Section 1103 Critical/Reportable Incident form documenting Eleanor's accident; and the affidavit of V.O. "Dean" Tekell, Jr., P.E., P.T.O.E., with the following attachments: Mr. Tekell's curriculum vitae, copies of literature on which Mr. Tekell relied to form his expert opinion, and black and white photocopied photographs of the daycare parking lot and a screenshot from a surveillance video. Also, in accordance with La. C.C.P. art. 966(A)(4)(a) and (b), Plaintiffs specifically referenced documents previously filed into the record in further support of their opposition: Penny Navarre's affidavit and the attached daycare sign in/sign out log for Thursday, June 4, 2020 and Mr. Grady's deposition

Plaintiffs argued that the affidavit and testimony of Ms. Navarre and the handbook showed that the daycare had no "supervisory" policy in place for the departure of its students. Plaintiffs contended that the handbook in no way addressed the daycare's duty to supervise its students after parents signed out their children for the day. Although the handbook set forth a "Safe Arrival and Departure Policy," Plaintiffs argued that the policy did not specifically address the daycare's supervision or control of children in the pick-up and drop-off areas outside the building. Plaintiffs noted that the handbook's policy in effect at the time of this accident provided that students leaving the daycare must be accompanied by a parent *or an adult* from their classroom to a vehicle, arguing that language made it clear that a parent is not the only adult person who can drop-off or pick-up a student. Plaintiffs also claimed that an updated version of the handbook became effective after the date of the accident at issue and contains the following language: "**DO NOT ALLOW** your child the freedom to run or roam the building, classrooms, hallway, parking lot, and driveway,", whereas the policy in effect at the time of the accident only prohibited children from running freely in the building, classrooms, and the hallway. Accordingly, Plaintiffs argued that change in language indicates the handbook's prior policy did not require parents to be primarily responsible for supervising their children after they were released from class and exited the building into the parking area and drive.[3]

---

[3] In their opposition memorandum, Plaintiffs also claimed that the updated handbook contains a section that states: "Little [P]eople's [P]lay [S]tation will not be held liable for accidents, incidents, or injuries that may occur to children who are not under the care of [L]ittle [P]eople's [P]lay [S]tation. When children are released from the class to parents/guardians, they are no longer under the care of [L]ittle [P]eople's [P]lay [S]tation." . Plaintiffs contended that the updated version of the handbook belies Defendants' argument that the "Safe Arrival and Departure Policy" in the handbook in effect at the time of the accident constituted a "supervisory" drop-off and pick-up procedure that absolved the daycare of any duty of supervision once Mr. Grady signed Eleanor out for the day. However, this portion of the updated handbook is not in the record and therefore may not be considered. See **Parent v. Louisiana Department of Public Safety and Corrections**, 2021-0897 (La. App. 1 Cir. 3/3/22), 341 So.3d 804, 806.

13

Plaintiffs also submitted the affidavit of V.O. "Dean" Tekell, an engineer qualified to render expert opinions as to the safe and proper design for parking and picking up and dropping off children on the premises of daycare centers. After reviewing the documents submitted in support of and in opposition to the motion for summary judgment, Mr. Tekell attested that the daycare did not have in place—nor communicate to parents—safe, supervised drop-off or pick-up points on the premises; did not provide the daycare employees with any instructions or directions with regard to safely having children picked up; and that there existed a complete lack of supervision of the loading and unloading of children from vehicles by the daycare staff. Mr. Tekell stated that the daycare had a duty and obligation to provide a reasonably safe location and procedure by which children could be picked up by parents and guardians driving and parking vehicles at the daycare. He attested that the daycare's failure to comply with that duty caused or substantially contributed to the occurrence of the accident at issue.

Citing this evidence, Plaintiffs argued the daycare could be held liable for Eleanor's injuries because the daycare failed to provide a supervisory policy for departure that applied to the parking lot and drive area outside the daycare. Plaintiffs cited **Gary**, 626 So.2d 901, in support. In **Gary**, a six-year-old child, who lived across the street from her elementary school, was struck by a moving vehicle at dismissal. When school let out at 3:00 p.m., the child ran out into the street right in front of the school without waiting for her mother, who normally picked her up. **Gary**, 626 So.2d at 902. In imposing liability on the school board, the Third Circuit found that the school board failed to present any evidence of a supervision policy once classes were dismissed. There was no one on duty in the school yard at dismissal, which the court noted to be a critical time to ensure students safely reached their buses or their parents' vehicles. Although the child was off-campus, the accident occurred immediately following and as a result of the child's unsupervised

departure from the school grounds. **Gary**, 626 So.2d at 904-05. Like the plaintiffs in **Gary**, Plaintiffs maintained Defendants did not have a supervisory policy, and as a result, Defendants should be liable for Plaintiffs' injuries.

Unlike **Gary**, however, Defendants here presented evidence of the daycare's pick-up and drop-off policy in the form of the handbook and Mr. Grady's own testimony. Mr. Grady testified that he was aware of and familiar with the daycare's departure procedure, which is identical to the policy as outlined in the handbook that was provided to him by the daycare. Mr. Grady confirmed that the daycare's drop-off and pick-up policy in the handbook made parents responsible for bringing their children into the daycare in the morning, signing them in, and then returning to the daycare and going back inside the building in the afternoon, signing out their children, retrieving them from their classrooms, and then exiting the building. As such, we find **Gary** distinguishable and find no merit to Plaintiffs' assertion that the daycare failed to provide a supervisory policy for departure.

Alternatively, Plaintiffs argued that, if the daycare did not have a legal duty to supervise its students once they exited the building after being signed out for the day by their parent, the daycare voluntarily assumed that duty by sometimes having daycare employees present in the pick-up and drop-off area. In **Barnes v. Bott**, 615 So.2d 1337, 1341 (La. App. 4 Cir.), writ denied, 619 So.2d 546 (La. 1993), a six-year-old child was hit by a car while crossing an unguarded intersection on his way home from school. Guards were usually posted at the intersection, but the crossing guard failed to show up on the day of the accident. The school board's policy in such cases was to either warn the students that no guard would be present or find a substitute guard. In this case, the school did neither. **Barnes**, 615 So.2d at 1339, 1341. The court of appeal held that when a school board provided a crossing guard at a particular crossing, it assumed the duty of verifying the presence of the guard "during her normal duty hours." **Barnes**, 615 So.2d at 1341. The court of appeal

found a breach of the school board's duty in not finding a substitute guard or warning the students that no guard would be present. **Barnes**, 615 So.2d at 1341.

We find the evidence presented in support of and in opposition to the motion for summary judgment demonstrates that the daycare did not assume the duty of supervision for Eleanor once she weas entrusted to the care of her father. As established by Ms. Navarre's affidavit, the daycare did not maintain a carpool line because parents were responsible for physically dropping off and retrieving their children from inside the daycare facility. The handbook also did not provide for supervised loading and unloading of children into their parents' vehicles, nor did it provide for daycare employees to be present outside the daycare supervising the parking lot and drive. In fact, Mr. Grady himself acknowledged that daycare employees did not help him bring his children out to his vehicle in the drop-off and pick-up area.

Ms. Ahles, the driver who struck Eleanor with her 4-Runner, testified that the daycare "frequently" had its employees present outside the daycare monitoring the pick-up and drop-off area "to make sure that vehicles weren't getting backed up, make sure kids weren't being left without, you know, parents saying, come on, let's get in the car, just kind of helping them hurry and get in the car and go." However, Ms. Ahles was later asked whether "[the daycare employees] would be in the area where parents were loading their children into the cars?" to which she responded, "Not necessarily because that was the parents' job. [The daycare employees] would just be in front of the buildings making sure traffic was kind of directed in that sense." Ms. Ahles also confirmed that she did not observe daycare employees outside the building every time she went to the daycare for drop-off and pick-up and further explained that, if employees were outside, sometimes they would be depositing trash in the dumpster or simply asking the parents to pull their cars up to make room for more parents arriving. On the date of the incident, it is undisputed

that there were no daycare employees outside in the drive or in the parking lot assisting with pick-up and drop-off.

Considering the foregoing evidence, we find, under the specific facts of this case, the daycare no longer owed a duty to supervise Eleanor at the time of the accident because Mr. Grady had resumed custody and control of his child in accordance with the daycare's established policy. Additionally, we find the daycare did not assume the duty of supervising the child during pick-up and drop-off. As such, on our *de novo* review, we find no error by the trial court in granting Defendants' motion for summary judgment.[4]

## DECREE

We affirm the trial court's November 28, 2023 judgment that granted summary judgment in favor of Defendants, Little People's Play Station, LLC, Joida, LLC, and Wilshire Insurance Company, and against Plaintiffs, Matthew and Melicia Grady, individually and as representatives of the minor, Eleanor Grady. All costs of this appeal are assessed to appellants.

**AFFIRMED.**

---

[4] Given our finding that Defendants did not have a duty to supervise, we pretermit any discussion of the breach element. See **Farrell**, 359 So.3d at 479. Further, to the extent Plaintiffs assert Defendants breached some other duty owed to Plaintiffs, we reject this argument. Plaintiffs did not introduce any evidence that would tend to establish the existence of a duty separate and apart from the duty of supervision or breach thereof.

MATTHEW GRADY AND MELICIA GRADY, INDIVIDUALLY AND AS REPRESENTATIVES OF THE MINOR, ELEANOR GRADY

VERSUS

MIA NICOLE AHLES, LITTLE PEOPLE'S PLAY STATION, LLC, AND MARKEL INSURANCE COMPANY

---

**WELCH, J.,** *dissenting in part.*

I respectfully dissent in part. I find that the duty and breach elements of Plaintiffs' premises liability claim were properly before the court on the motion for summary judgment and should have been considered by the trial court. On my *de novo* review of the record, I find that genuine issues of material fact exist as to whether the daycare's pick-up and drop-off areas presented an unreasonably dangerous condition. Based on the affidavit of V.O. "Dean" Tekell—an engineer qualified to render expert opinions as to the safe and proper design for parking, picking up, and dropping off children on the premises of daycare centers—coupled with the surveillance video depicting the accident, it is clear that Mr. Grady was distracted and overwhelmed while loading Oliver's car seat into his vehicle and attempting to make sure that Eleanor was safe. To say that the daycare had no responsibility to assist with pick-up and drop-off fails to consider the duty of the daycare to maintain its premises in a reasonably safe condition. Accordingly, I find that the trial court erred to the extent that it dismissed all claims brought by Plaintiffs against Defendants in rendering summary judgment in favor of Defendants on Plaintiffs' negligent supervision claim. I would reverse that portion of the trial court's November 28, 2023 judgment that dismissed all claims brought by Plaintiffs against Defendants.